# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **AARON J. ELLIOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:18-cv-00720** |
| **v.** | ) | |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Aaron J. Elliott's Motion for Judgment on the Administrative Record (Doc. No. 13), to which the Commissioner of Social Security ("Commissioner") has responded (Doc. No. 15).[1] Upon consideration of the parties' briefs and the transcript of the administrative record (Doc. No. 9),[2] the motion will be denied and the decision of the Commissioner's decision will be affirmed.

## I. <u>Introduction</u>

Elliott filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on September 14, 2016, alleging disability onset as of December 20, 2005, due to post-traumatic stress disorder ("PTSD"), asthma like symptoms, migraines, depression, anxiety, and sleep apnea. (Tr. 12, 92-93, 168, 206.) Elliott's claim was denied at the initial level on November 7, 2016, and on reconsideration on April 26, 2017. (Tr. 12, 111, 119.) Elliott

---

[1] In order to ensure the prompt resolution of this matter, the Court will vacate the referral to the Magistrate Judge.

[2] Referenced hereinafter by "Tr." followed by the page number found in bolded typeface at the bottom right corner of the page.

subsequently requested *de novo* review of his case by an administrative law judge ("ALJ"). (Tr. 12, 121-22.) The ALJ heard the case on February 6, 2018, when Elliott appeared with counsel and gave testimony. (Tr. 12, 31-83.) Testimony was also received by Elliott's ex-wife and a vocational expert. (Tr. 12, 63-82.) The ALJ issued a written decision finding Elliott not disabled. (Tr. 12-26.) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 20, 2005 through his date last insured of March 31, 2013 (20 C.F.R. 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: posttraumatic stress disorder, asthma, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can never climb ladders, ropes and scaffolds. He must avoid concentrated exposure to extreme cold and extreme heat, dust, odors, fumes, gases, smoke, and pulmonary irritants. He cannot work with or near dangerous and moving type of equipment or machinery, moving mechanical parts and unprotected heights but can operate a motor vehicle. He can understand, remember and apply simple to multi-step detailed instructions and tasks. He can interact occasionally with supervisors, co-workers and with the general public. He can maintain concentration, persistence and pace for two hours at a time over an eight-hour workday. He can adapt to infrequent changes in a work setting.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on July 21, 1983 and was 29 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 20, 2005, the alleged onset date, through March 31, 2013, the date last insured (20 C.F.R. 404.1520(g)).

(Tr. 14, 15, 16-17, 24, 25, 26.) On June 19, 2018, the Appeals Council denied Elliott's request for review of the ALJ's decision (Tr. 1-8), thereby rendering that decision the final decision of the Commissioner.

## II    Standard of Review

The Court is limited to determining whether the Commissioner's decision concerning Elliott's disability is supported by substantial evidence. "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (emphasis deleted)). "[T]he threshold for such evidentiary sufficiency is not high." Id. at 1154. Substantial evidence is "more than a mere scintilla." Id. (citations omitted). "It means – and means only – 'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol.

Edison, 305 U.S. at 229). The role of the Court is to apply this standard, not "resolve conflicts in

evidence[ ] or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

## III.  Analysis

### A.  The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." Id. § 423(d)(3). The Commissioner considers a

claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court

of Appeals as follows:

> (1) a claimant who is engaging in substantial gainful activity will not be
> found to be disabled regardless of medical findings; (2) a claimant who does
> not have a severe impairment will not be found to be disabled; (3) a finding
> of disability will be made without consideration of vocational factors, if a
> claimant is not working and is suffering from a severe impairment which
> meets the duration requirement and which meets or equals a listed
> impairment in Appendix 1 to Subpart P of the Regulations. Claimants with
> lesser impairments proceed to step four; (4) a claimant who can perform
> work that he has done in the past will not be found to be disabled; and (5) if
> a claimant cannot perform his past work, other factors including age,
> education, past work experience and residual functional capacity must be
> considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r

of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. § 404.1520. The claimant bears

the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The Commissioner can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a non-exertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615-16; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the Commissioner must consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir.

2014) (citing 20 C.F.R. § 404.1545(e)).

## B.    Elliott's Statement of Errors

Elliott argues that the ALJ erred (1) by failing to properly consider and give appropriate weight to the opinion evidence from his treating psychiatrist; and (2) by improperly discounting his credibility.[3] (Doc. No. 14 at 7, 12.)

### 1.    Whether the ALJ failed to properly consider and give appropriate weight to the opinion evidence from Elliott's treating psychiatrist, Dr. Sharone E. Barwise.

Elliott contends that the ALJ failed to properly evaluate or give any explanation of the weight accorded to the medical opinion of Dr. Sharone E. Barwise, his treating psychiatrist, while giving "some weight" to two non-examining state agency physicians who stated they could not form an opinion of Elliott's limitations. (Doc. No. 14 at 8, 11.) In response, the Commissioner contends that the ALJ properly evaluated Dr. Barwise's opinion by finding it was entitled to little weight because it was inconsistent with Dr. Barwise's treatment record and the holistic record. (Doc. No. 15 at 4.)

Social security regulations and rulings establish the framework for an ALJ's consideration of medical opinions. See 20 C.F.R. § 404.1527; SSR 96-2p.[4] Under the so-

---

[3] Elliott's medical record, as found by the ALJ can be found at pages 18 through 21 of the administrative transcript. For purposes of efficiency, the Court assumes the familiarity of the parties with the record and only repeats it below as necessary to address Elliott's claims of error.

[4] In 2017, new SSA regulations came into effect. The newest regulations apply only to claims filed with the SSA on or after March 27, 2017. Thus, the Court applies the regulations that were in effect at the time of Elliott's filing on September 14, 2016. Janeczek v. Comm'r of Soc. Sec., No. 1:18-CV-629, 2018 WL 6419995, at *4 (W.D. Mich. Dec. 6, 2018) (collecting cases); see 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee).

called treating physician rule, the ALJ is generally required to give the treating physician's opinion controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. § 404.1527(c)(2); see also Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." Buxton, 246 F.3d at 773. Rather, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3); see also Bell v. Barnhart, 148 F. App'x 277, 285 (6th Cir. 2014) (declining to give weight to a doctor's opinion that was supported by only the claimant's reported symptoms).

If the ALJ declines to give a treating physician's opinion controlling weight, the ALJ must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2) (2004)). When determining the weight to give the opinion of a treating physician, ALJs need not explicitly mention in their decisions every factor under 20 C.F.R. § 404.1527(d). See Adams v. Astrue, No. 1:07-cv-2543, 2008 WL 9396450, at *3, n.5 (N.D. Oh. Sept. 25, 2008) (citing Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004)). However, the regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Those good reasons

must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188 at *5 (1996). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson, 378 F.3d at 544.

On March 19, 2018, Dr. Barwise completed a medical source statement ("MSS") and opined that Elliott had extreme limitations in the following work-related mental activities: "[u]nderstand and remember simple instructions"; "[c]arry out simple instructions"; "[t]he ability to make judgments on simple work-related decisions"; "[u]nderstand and remember complex instructions"; "[c]arry out complex instructions"; and "[t]he ability to make judgments on complex work-related decisions." (Tr. 1914.) Dr. Barwise opined that Elliott was markedly limited in his ability to interact appropriately with the public, with supervisors and with coworkers, and was extremely limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 1915.) Dr. Barwise also opined that Elliott had significant difficulty being around people, was socially isolated, and was not able to tolerate changes in work or home environment. Id. Dr. Barwise further opined that Elliott experienced marked anxiety and hypervigilance and could not recall simple instructions. Id. Dr. Barwise stated that Elliott's limitations were present since early 2013. Id.

The ALJ determined that Dr. Barwise's opinion should be given little weight, stating:

> The undersigned assigns little weight to this opinion as it pertains to the claimant's functioning prior to March 2013 because it is

inconsistent with Dr. Barwise's own treatment notes and the record as a whole. Dr. Barwise opined that the claimant had extreme limitations in understanding and remembering simple instructions. However, in February 2013 treatment notes Dr. Barwise stated that the claimant was a fair historian, noting that his narratives were "replete with multiple episodes of ... being traumatized ... through the course of his life prior, during, and after military service." Dr. Barwise added that the claimant was not able to tolerate changes in home environment. However, February 2013 notes show the claimant had recently moved from Memphis to Nashville. Dr. Barwise indicated that the claimant isolated himself socially. However, March 2013 notes show the claimant lived with two roommates, one of whom was in the process of becoming his caregiver. Finally, January 2013 notes show the claimant was looking for work and eventually wanted to return to school to complete his education. This seems inconsistent with the degree of limitations discussed by Dr. Barwise. (Ex. 6F)

(Tr. 23-24.)

Elliott first argues that the ALJ makes "conflicting statements about Dr. Barwise's opinion evidence and the presence of opinion evidence in the file." (Doc. No. 14, at 8-9 (citing Tr. 23).) He notes that the ALJ's statement about the record's lack of "any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" is contradicted by the VA rating Elliott 70% disabled because of his PTSD, by the VA approving Elliott for the VA Family Caregiver Program stipend, and because the ALJ's statement "does not mention the significant limitations assessed by Dr. Barwise." (Id. (citing Tr. 23)). Although the Sixth Circuit has not specified what weight a disability rating from the Veterans Administration is entitled to, it has expressly stated that an ALJ is "not bound to accept it." Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 510 (6th Cir. 2013); see also LaRiccia v. Comm'r of Soc. Sec., 549 F. App'x 377, 387 (6th Cir. 2013) ("This court has not set forth a specific standard regarding the weight the Commissioner should afford a 100% disability determination by

the VA."). Moreover, Title 20 C.F.R. § 404.1504 provides:

> A decision by any . . . other governmental agency about whether you are disabled . . . is based upon its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.

Id.[5]

The ALJ considered that the September 18, 2012 VA records showed that Elliott and his wife were approved for the Caregiver Program stipend and that Elliott was able to make decisions about his own care. (Tr. 21, 368-89, 388-94.) The ALJ also noted that the VA records reflected that Elliott reported having problems with shopping, transportation, and managing finances, but that Elliott did not have any problems with preparing meals, doing housework or managing medications. (Tr. 21, 370.) The ALJ further considered Elliott's VA disability rating. (Tr. 21, 22.) The ALJ stated, in part, as follows:

> The Veteran's Administration rated the claimant 70% disabled due to service-connected impairments prior to his date last insured. While the disability determinations of other governmental agencies are entitled to consideration, they are not entitled to any particular weight in determining disability for Social Security purposes (Social Security Ruling 06-3p). In this case, the undersigned notes that the Veteran's Administration's finding is not based on Agency policy or definitions of disability. Therefore, it is entitled to little weight. (Ex. 4F, p. 242-243)
>
> Despite the claimant's PTSD, asthma, and obesity, he has not required any repeated hospitalizations of an extended duration nor needed frequent ER visits due to exacerbations. He took part in a six-week residential PTSD program with the VA in early 2011 where

[5] Effective March 27, 2017, this section was amended. However, because Elliott filed his application for disability benefits with the Social Security Administration on September 14, 2016, the Court applies the version of 20 C.F.R. § 404.1504 in effect at the time of his filing.

he got along with his peers and staff and was allowed to go out on passes with the group and to handle  personal business. Apart from this program, the claimant's PTSD was handled on an outpatient basis prior to the date last insured.

(Tr. 22.)

Here, the ALJ recognized that the VA's disability rating is not entitled to any particular weight as such a finding is not based on SSA policy or definitions, and properly considered the VA rating along with the record as a whole. As to Elliott's argument that the ALJ's statement was contradictory because it did not mention the limitations assessed by Dr. Barwise, the ALJ provided an evaluation of Dr. Barwise's opinion immediately following this statement. Thus, based upon this record, to the extent there is anything contradictory about the ALJ's statement, such a contradiction, if any, is harmless as the ALJ properly considered the VA record and Dr. Barwise's opinion.

Elliott next objects to the ALJ's attempt to discredit Dr. Barwise's opinion that Elliott was unable to tolerate changes in home environment by noting that Barwise's February 2013 treatment notes showed that Elliott had recently moved from Memphis to Nashville. (Doc. No. 14 at 9.) Elliott argues that March 2013 "treatment notes show that the reason for Elliott's move was to be near family and that his current roommates, one of whom was in the process of becoming his Family Caregiver, were 'supportive,'" and that "[t]his does not exactly describe a social situation in which the Elliott was voluntarily engaged in normal socialization with other people, but rather one in which the one roommate was agreeing to provide supportive ADL care for him." Id. The ALJ noted that Dr. Barwise opined that Elliott could not "tolerate changes in home environment," yet Elliott showed the ability to move from Memphis to Nashville. (Tr. 24, 1698, 1915.) While Elliott provides a justification for this move, the fact remains that Elliott was able to change his home environment. Moreover, although one of Elliott's roommates was going to act as his caregiver, Elliott was willing

and able to live with two non-family members, one of whom was not his caregiver. Thus, while Elliott may provide a plausible explanation  that his actions of moving and living with two other people, albeit one being his caregiver, are not inconsistent with Dr. Barwise's opinion, the Court cannot say that the ALJ's conclusion that such actions were inconsistent with Dr. Barwise's opinion is not supported by substantial evidence.

Further, the ALJ also noted that Elliott was looking for work and eventually wanted to return to school to complete his education, activities that would contradict Dr. Barwise's opinion that Elliott could not tolerate changes in home or work environment and that Elliott isolated himself socially. (Tr. 1915.) Elliott asserts that the record actually states that Elliott "'would eventually like to go back to school if he can continue to improve his PTSD symptoms,'" (Doc. No. 14, at 9 (quoting Tr. 1149) (emphasis in original)), apparently arguing that Elliott's looking for work and intention of returning to school were contingent on the improvement of his symptoms. However, the use of the phrase "continue to improve" indicates that Elliott's symptoms were improving. In any event, Elliott's willingness to look for work and return to school contradict Dr. Barwise's opinion. Elliott asserts that there is a contradiction in the January 2013 report as one page of the report describes Elliott as "not" looking for work, (Tr. 1147), and the last page, (Tr. 1149), states that Elliott was "now" looking for work and argues that the ALJ failed to discuss or reconcile these contradictions. However, the statement that Elliott was looking for work is corroborated by the April 2013 treatment records that likewise state that Elliott was "now looking for work." (Tr. 1673.)

In discrediting Dr. Barwise's opinion, the ALJ noted the discrepancy between Dr. Barwise's opinion about Elliott having extreme limitations in understanding and remembering simple instructions, and Dr. Barwise's February 2013 treatment notes stating that Elliott was a fair

historian. (Tr. 21, 24, 1698.) The ALJ's decision also noted that the February 2013 treatment notes showed that Elliott's "GAF score was in the 60 to 65 range, indicating moderate to mild limitations," and that Elliott "reported that implementing memory/attention strategies were helpful in his daily life when he utilized them." (Tr. 21, 1696-1702.) The ALJ further noted that in March 2011, Elliott completed a six-week residential PTSD program and that he "got along with peers and staff without incident" and that "[h]is judgment and insight were noted to be good as evidenced by entering and completing the program and recognizing a need for treatment." (Tr. 20, 366.) See Crum v. Comm'r of Soc. Sec., No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) ("Elsewhere in her decision, the ALJ laid out in detail the treatment records that showed that Crum could return to normal work activity. . . . No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014)).

Elliott next argues that the ALJ "never discusses what weight, if any, is given to Dr. Barwise's opinion," and that the ALJ did not discuss any of the factors in 20 C.F.R. § 404.1527(c) regarding Dr. Barwise's opinion. (Doc. No. 14, at 10.) In not assigning controlling weight to Dr. Barwise's opinion, the ALJ clearly stated that "[t]he undersigned carefully considered the opinion of Sharone Barwise, M.D., the claimant's treating psycahirtist. . . ." and "[t]he undersigned assigns little weight to this opinion as it pertains to the claimant's functioning prior to March 2013 because it is inconsistent with Dr. Barwise's own treatment notes and the record as a whole." (Tr. 23-24) (emphasis added.) As previously discussed, the ALJ cited inconsistencies between Dr. Barwise's opinion and her treatment notes, as well as with other medical evidence in the record.

In short, the record demonstrates that the ALJ evaluated Dr. Barwise's opinion and gave sufficient reasons for the weight afforded to it.

Elliott also challenges the ALJ's decision to give "some weight" "to two non-examining state agency physicians who stated they could not form an opinion of Elliott's limitations," and argues that "there is no discussion whatsoever about how [Dr. Barwise's] opinion should be weighed in comparison to other opinion evidence or lack thereof in the file." (Doc. No. 14, at 10-11.) However, once an ALJ properly discredits a treating physician's opinion, the treating physician rule no longer applies. Kepke, 636 F. App'x at 633; Kitchen v. Colvin, No. 3:16-CV-00020, 2017 WL 395087, at *9 (M.D. Tenn. Jan. 30, 2017), report and recommendation adopted sub nom. Kitchen v. Berryhill, No. 3:16-CV-0020, 2017 WL 1018432 (M.D. Tenn. Mar. 16, 2017). "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

"An ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments." Neal v. Astrue, No. 3:08-0464, 2009 WL 2135792, at *7 (M.D. Tenn. July 16, 2009) (citing Reynolds v. Secretary, 707 F.2d 927, 930 (6th Cir.1983)). "'State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation,' and whose findings and opinions the ALJ 'must consider . . . as opinion evidence.'" Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 712 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.15279(e)(2)(i). "In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); see also Hoskins v. Comm'r

of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.") It is the function of the ALJ to resolve the conflicts between the medical opinions. Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [the claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.")

Here, the ALJ considered the administrative findings of fact made by the State agency non-examining expert sources. (Tr. 24.) In giving these opinions "some weight," the ALJ stated:

> On November 4, 2016, Fawz Schoup, Ph.D., opined that the record was technically insufficient to rate the claim prior to the date last insured. Karla Montague-Brown, M.D., affirmed these findings at the reconsideration level. The undersigned accords these opinions some weight because the physicians thoroughly evaluated the objective medical evidence in this claim, have expertise in the field, and provided specific reasons for their assessments.

Id.

Elliott argues that the ALJ improperly accorded some weight to two non-examining State agency consultants "who explicitly stated they could not form an opinion as to Elliott's limitations." (Doc. No. 16, at 2.) First, the ALJ properly considered the State agency non-examining expert sources' opinions in conjunction with the whole record and did not give these opinions controlling weight, but only "some." Second, Elliott ignores that throughout the decision, the ALJ specifically stated that Elliott must show that he was disabled by his date last insured, which was March 31, 2013. (Tr. 14, 18, 23.) As discussed by the ALJ, the evidence regarding the relevant period of time was inconsistent with and did not support the opinion of Dr. Barwise. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled'

prior to the expiration of his insured status." Moon, 923 F.2d at 1182. "'Evidence of disability obtained after the expiration of insured status is generally of little probative value.'" Grisier v. Comm'r of Soc. Sec., 721 F. App'x 473, 477 (6th Cir. 2018) (quoting Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir. 2004)). The State agency consultants' opinions recognized the lack of evidence in Elliott's medical record showing that he was disabled because of PTSD by March 31, 2013. (Tr. 24, 96-97, 100, 106-08, 110.) While Elliott attempts to defend Dr. Barwise's opinion, Elliott does not cite to actual treatment records from Dr. Barwise during the relevant period that support Dr. Barwise's opinion, which was given five years after Elliott's date last insured. Dr. Barwise's February 21, 2013 treatment records, cited by the ALJ, show that Elliott reported that his mood had been mostly stable, but that he had episodic anxiety, that his medications were helpful for sleep, and that he had "no current symptoms of major depression, mania or hypomania." (Tr. 21, 1698.) "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013); Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, Peterson must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence.")

The Court finds no error in the ALJ's evaluation of the State agency medical consultants' opinions.

### 2.     Whether the ALJ Improperly Discounted Elliott's Credibility

Elliott argues that the ALJ failed to properly consider Elliott's "statements about his limitations and how they support the opinions of his treating sources." (Doc. No. 14, at 12.) He

contends that the "ALJ never actually makes any finding regarding [Elliott's] credibility except a boilerplate paragraph." Id. In response, the Commissioner contends that the ALJ properly evaluated Elliott's alleged symptoms in a manner that was consistent with SSA's regulations and policies. (Doc. No. 15, at 10.)

Social Security Ruling 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017).[6] SSR 16-3p, in relevant part, provides:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .
>
> We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record. We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions. We will evaluate an individual's symptoms considering all the evidence in his or her record.

---

[6] SSR 16-3p superseded SSR 96-7p. SSR 16-3p became effective on March 28, 2016, and applies here because the ALJ's decision was entered over two years after March 28, 2016. See Blain v. Comm'r of Soc. Sec., No. 1:17-CV-844, 2018 WL 4178200, at *6 (W.D. Mich. Aug. 15, 2018), report and recommendation adopted, No. 1:17-CV-844, 2018 WL 4150170 (W.D. Mich. Aug. 30, 2018) ("SSR 16-3p applies to administrative decisions made on or after March 28, 2016." (citing Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)).

Id. at *8.

The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility . . . to clarify that subjective symptom evaluation is not an examination of an individual's character.'" Dooley v. Comm'r of Soc. Sec., 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); see also SSR 16-3p, 2017 WL 5180304, at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Instead of "focusing on credibility, the new ruling focuses on consistency." Barncord v. Comm'r of Soc. Sec., No. 2:16-CV-389, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017). There is no substantive difference between SSR 16-3p and SSR 96-7p or the analysis required of the ALJ, and therefore the case law pertaining to "credibility" assessments remains applicable. See, e.g., Patterson v. Saul, No. 3:18-0641, 2019 WL 4237854, at *11 (M.D. Tenn. Aug. 2, 2019), report and recommendation adopted sub nom. Patterson v. Soc. Sec. Admin., No. 3:18-CV-00641, 2019 WL 4237855 (M.D. Tenn. Aug. 23, 2019).

"SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment . . . ." Coffey v. Comm'r of Soc. Sec., No. 1:16-CV-222-SKL, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017). As to a plaintiff's subjective symptoms, the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any

measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-*8. "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." Harley v. Comm'r of Soc. Sec., 485 F. App'x 802, 804 (6th Cir. 2012). Moreover, "[a]n ALJ may consider noncompliance with treatment as a credibility factor." E.g., Robertson v. Colvin, No. 4:14-CV-35, 2015 WL 5022145, at *6 (E.D. Tenn. Aug. 24, 2015). If an ALJ "simply erred in a factual finding," courts "are not to second-guess," "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 714 (6th Cir. 2012).

Here, the ALJ properly considered Elliott's subjective complaints in the context of the record as a whole. From the outset, the ALJ stated that despite his current limitations Elliott needed to prove that he was disabled prior to the date last insured, March 31, 2013. (Tr. 18.) The ALJ considered Elliott's treatment record through March 2013 and concluded that "[d]espite the claimant's PTSD, asthma, and obesity, he has not required any repeated hospitalizations of an extended duration nor needed frequent ER visits due to exacerbations." (Tr. 22.) The ALJ also noted Elliott's "issues with poor compliance," citing that the record showed Elliott "was prescribed psychiatric medications as early as 2006, but notes show[ed] that as late as 2009 he was taking no medications," and that July 27, 2007 notes showed that Elliott "stopped taking Celexa and reported that he was feeling fine" and "denied having any nightmares or being very anxious." (Tr. 23, 18, 20, 1781, 1826, 1876-77, 1881.)

Additionally, the ALJ noted that Elliott earned $8,755.75 in 2008, a year when Elliott was taking no medications. (Tr. 23, 178.)

The ALJ also noted that despite Elliot's ex-wife being appointed as caregiver at the time to help keep track of his medications and appointments, January 2013 notes showed that Elliott reported that he was looking for work and eventually wanted to return to school to complete his degree, which seemed inconsistent with someone alleging that they were unable to work since 2005. (Tr. 22, 1673-74.) The ALJ further cited Elliott's use of medications and Elliott's ex-wife's statements about him being able to keep track of his medications, though she double-checked him (Tr. 22-23, 70.) The ALJ recognized that in July 2012 Elliott was without medication for four days, but reported that his mood was better and more stable after his medication was increased. (Tr. 20, 396.) The ALJ also considered that Elliott completed a six-week residential PTSD program in March 2011 and that "he got along with peers and staff without incident," and that "[h]is judgment and insight were noted to be good as evidenced by entering and completing the program and recognizing a need for treatment." (Tr. 20, 366.)

In construing the record as a whole, the Court concludes that the ALJ evaluated Elliott's credibility in the context of the record as a whole and such evaluation is based upon substantial evidence. Thus, the ALJ's credibility determination is entitled to great deference and will not be disturbed. <u>Ulman</u>, 693 F.3d at 714.

IV.    <u>Conclusion</u>

The Court is satisfied that, at the very least, the ALJ's determination was reasonable and fell within the permissible "zone of choice" based upon substantial evidence within which the ALJ could "go either way, without interference by the courts." <u>Blakley v. Comm'r of Soc. Sec.</u>, 581 F.3d 399, 406 (6th Cir. 2009). It is thus inappropriate to disturb the ALJ's conclusions. Elliott's motion for

judgment on the administrative record will be denied and the final decision of the Commissioner will be affirmed.

The Court will file an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE